UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JPMORGAN CHASE BANK, N.A.,

                              Plaintiff,

                                                          08 Civ. 9116 (PGG)

          -against-
                                                          **MEMORANDUM
                                                          OPINION AND ORDER**
THE IDW GROUP, LLC,

                              Defendant.

PAUL G. GARDEPHE, U.S.D.J.:

          The IDW Group, LLC ("IDW") entered into a series of written agreements with

JPMorgan Chase Bank, N.A. ("JPMorgan") in which it agreed to provide executive search

services to JPMorgan.  In this lawsuit, JPMorgan alleges that IDW breached these agreements,

breached the implied covenant of good faith and fair dealing, and breached its fiduciary duty to

JPMorgan, by inter alia, recruiting JPMorgan employees to work at a competing firm.  Before

this Court is IDW's motion to dismiss Counts Three and Four of the Complaint, which

respectively allege claims under New York law for breach of the implied covenant of good faith

and fair dealing and breach of fiduciary duty.  IDW has also moved to dismiss JPMorgan's

demand for costs and attorneys' fees.

          IDW argues that the implied covenant claim must be dismissed because it is based

on "precisely the same conduct" asserted in JPMorgan's breach of contract claims.  (Def. Br. at

2)  In the alternative, IDW contends that this claim must be dismissed because it seeks to impose

duties on IDW that the parties' agreements do not require.  (Id. at 11)  IDW further argues that

the breach of fiduciary duty claim should be dismissed because JPMorgan has failed to assert

facts sufficient to show a fiduciary relationship, and because the breach of fiduciary duty claim is

duplicative of JPMorgan's breach of contract claim.  (Id. at 12)  Finally, IDW argues that

JPMorgan's demand for costs and attorneys' fees should be dismissed because the underlying

agreements do not provide for any such recovery.  (Id. at 18)

            For the reasons stated below, IDW's motion to dismiss Count Three is granted in

part and denied in part; IDW's motion as to Count Four is denied; and IDW's motion concerning

JPMorgan's demand for costs and attorneys' fees – which JPMorgan does not contest (Pltf. Br. at

1 n.1) – is granted.

## BACKGROUND

## A.    THE FOUR AGREEMENTS BETWEEN THE PARTIES

            IDW is an executive search firm working in the financial services industry.

(Cmplt. ¶¶ 6, 17–18)  Between February 2007 and June 2008, IDW and JPMorgan entered into

four written agreements (collectively the "Agreements") in which IDW agreed to provide certain

executive search services to JPMorgan.  Specifically, IDW agreed to:  (a) analyze the relevant

candidate pools for each position that JPMorgan identified; and (b) produce reports to JPMorgan

that identified potentially qualified diverse candidates within the respective candidate pools. [1]

(Id. ¶ 7; see Decl. of IDW's President and Chief Executive Officer Ilana D. Weinstein, Nov. 11,

2008 ("Weinstein Decl."), Ex. A ("February 12 Agreement") at 14, 16; Ex. B ("August 6

Agreement") at 1; Ex. C ("August 9 Agreement") at 1; Ex. D ("June 18 Agreement") at 1)  In

---

[1] While this Court accepts "the facts alleged in the complaint as true, and draws all reasonable
inferences in favor of the plaintiff[,] [it is] not limited solely to the allegations in the complaint."
Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005) (citation omitted).  Where, as
here, "a plaintiff has relied on the terms and effect of a document in drafting the complaint, and
that document is thus integral to the complaint, [this Court] may consider its contents even if it is
not formally incorporated by reference."  Id. (internal quotation marks and alteration omitted).

exchange, JPMorgan agreed to pay IDW based on a set fee schedule.  (Cmplt. ¶ 7; Weinstein

Decl., Ex. A at 12, 14, 16; Ex. B at 2; Ex. C at 2; Ex. D at 2)

1.    __The February 12, 2007 Agreement__

On or about February 12, 2007, the parties entered into their first written

agreement (the "February 12 Agreement"), whereby IDW agreed to help JPMorgan recruit

candidates for positions within JPMorgan's Credit Hybrids Trading Group.  (Cmplt. ¶ 8;

Weinstein Decl., Ex. A at 14, 16)  Under this agreement, IDW would receive individual search

assignments from JPMorgan and then analyze JPMorgan's staffing needs, interview and evaluate

candidates, present confidential written reports on the candidates to JPMorgan, schedule

interviews between JPMorgan and each candidate, collect references concerning the final

candidate, assist JPMorgan in structuring proposed compensation packages for the successful

candidates, and assist JPMorgan in integrating successful candidates into their respective client

teams.  (Cmplt. ¶ 17; Weinstein Decl., Ex. A at 11)

The February 12 Agreement contains non-solicitation and confidentiality

provisions that are at the core of JPMorgan's breach of contract claims.  With respect to non-

solicitation, the February 12 Agreement provides that:

> [IDW] shall not, directly or indirectly solicit, induce, recruit or
> entice any employee or contractor of [JPMorgan] within the Credit
> Hybrids Trading Line of Business . . . to leave [JPMorgan] for a
> position outside [JPMorgan] during the term of this Agreement and
> for a period of one year from the termination or expiration of this
> Agreement, or for a period of one year from the last date of the
> provision of Service(s) (e.g. the last placement) provided in
> accordance with this Agreement, whichever is later.  [IDW] also
> agrees to refrain from accepting any direct overtures regarding
> candidacy for a position outside of [JPMorgan] from [JPMorgan]
> employees . . . , and, to the extent that [IDW] fails to so refrain,
> such acceptance will be deemed a solicitation as prohibited herein.

(Weinstein Decl., Ex. A ¶ 11; see Cmplt. ¶ 9)  The February 12 Agreement also requires IDW to maintain the confidentiality of, and refrain from using or disclosing, the confidential, proprietary, and personal materials and information that JPMorgan provides to IDW.  (Cmplt. ¶ 10; Weinstein Decl., Ex. A ¶¶ 5, 10)  Finally, the February 12 Agreement contains provisions concerning indemnification, JPMorgan's right to audit IDW, the fact that both parties are independent contractors, non-exclusivity, and merger.

       2.    **The Three Subsequent Agreements**

On or about August 6, 2007, the parties entered into a second written agreement (the "August 6 Agreement"), whereby IDW agreed to assist JPMorgan in recruiting candidates for JPMorgan's North American Portfolio Group, which is the North American portion of JPMorgan's Proprietary Positioning Group.  (Cmplt. ¶ 11, Weinstein Decl., Ex. B at 1)  On or about August 9, 2007 and June 18, 2008, the parties entered into two additional agreements (the "August 9 Agreement" and the "June 18 Agreement"), in which IDW agreed to help JPMorgan recruit candidates for JPMorgan's Proprietary Positioning Group globally.  (Cmplt. ¶¶ 13, 15, Weinstein Decl., Ex. C at 1, Ex. D at 1)

The August 6, August 9, and June 18 agreements explicitly incorporate the terms and conditions of the February 12 Agreement.  (Weinstein Decl., Ex. B at 1; Ex. C at 1; Ex. D at 1)  In addition, the three subsequent agreements contain non-solicitation clauses similar to the February 12 Agreement's non-solicitation provision.  The August 6 Agreement prohibits IDW from:  (a) soliciting, inducing, recruiting, or enticing any employee or contractor within JPMorgan's North America Portfolio Group (or an overlapping functional or product area) to leave for a position outside the North America Portfolio Group; and (b) accepting any direct overtures from employees within JPMorgan's North America Portfolio Group regarding candidacy for a position outside JPMorgan.  (Cmplt. ¶ 12; Weinstein Decl., Ex. B at 3)

4

Similarly, both the August 9 and June 18 Agreements prohibit IDW from:  (a) soliciting, inducing, recruiting, or enticing any employee or contractor within JPMorgan's Proprietary Positioning Group (or an overlapping functional or product area) to leave for a position outside the Proprietary Positioning Group; and (b) accepting any direct overtures from employees within JPMorgan's Proprietary Positioning Group regarding candidacy for a position outside JPMorgan. (Cmplt. ¶¶ 14, 16; Weinstein Decl., Ex. C at 3; Ex. D at 3)

**B.      IDW'S ALLEGED WRONGFUL CONDUCT**

The Complaint alleges that between March and July 2008, six employees within JPMorgan's Investment Bank resigned and then assumed positions at Citadel Investment Group, LLC ("Citadel"), which JPMorgan describes as "a global financial institution focusing on alternative investment strategies and services, often acting in direct competition with JPMorgan." (Cmplt. ¶¶ 1, 21)  The first of the six employees to leave for Citadel was Patrik Edsparr ("Edsparr"), who as of January 2008, "functioned as JPMorgan's Global Head of Rates, Foreign Exchange, Securitized Products, Fixed-Income Exotics & Hybrids, Proprietary Positioning, and Principal Investments."  Edsparr, who reported to the head of JPMorgan's Investment Bank, supervised the Proprietary Positioning Group referred to in the Agreements.  (Id. ¶ 23)

JPMorgan alleges that it learned in August 2008 that IDW had helped Citadel recruit Edsparr and five other employees from JPMorgan's Investment Bank.  (Id. ¶¶ 22–24, 26, 28)  JPMorgan further claims that IDW "received a substantial placement fee from Citadel for succeeding in inducing Edsparr to leave his employment with JPMorgan and accept an offer from Citadel" and that "IDW directly or indirectly solicited, induced, recruited, or enticed (or failed to refrain from accepting direct overtures from) some or all of the [other five] employees . . . to leave their employment with JPMorgan for a position elsewhere."  (Id. ¶¶ 26, 28)

On October 23, 2008, JPMorgan filed this action, which asserts four claims against IDW:  (1) breach of contract by "directly or indirectly soliciting, inducing, recruiting, or enticing JPMorgan employees and/or assisting JPMorgan employees in pursuing opportunities outside JPMorgan" (Id. ¶ 32); (2) breach of contract by "using and, on information and belief, disclosing to third parties, Confidential, Proprietary, and Personal Information for purposes other than the rendering of the Services, including for purposes of wrongfully soliciting JPMorgan employees" (Id. ¶ 37); (3) breach of the implied covenant of good faith and fair dealing; and (4) breach of fiduciary duty.

On November 12, 2008, IDW moved under Fed. R. Civ. P. 12(b)(6) to dismiss Counts Three and Four of the Complaint and JPMorgan's demand for costs and attorneys' fees.

## DISCUSSION

### A.    STANDARD UNDER RULE 12(b)(6)

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111–12 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  This Court "must accept all well-pleaded facts as true[, must] consider those facts in the light most favorable to the plaintiff," Patane, 508 F.3d at 111, and must draw all reasonable inferences from those allegations in plaintiff's favor.  See Thomas v. City of New York, 143 F.3d 31, 36 (2d Cir. 1998).  The issue on a motion to dismiss "'is not whether . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235–36 (1974)).  The complaint must set forth

allegations supporting each of the material elements necessary to sustain recovery under each count of the complaint.  See Connolly v. Havens, 763 F. Supp. 6, 9 (S.D.N.Y. 1991).

**B.      IDW'S ALLEGED BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Count Three of the Complaint alleges that IDW breached the implied covenant of good faith and fair dealing by

> failing to inform JPMorgan that it had been retained by Citadel to recruit Edsparr on Citadel's behalf, (b) failing to disclose to JPMorgan Citadel's intentions of recruiting key personnel in JPMorgan's Investment Bank, and (c) soliciting JPMorgan employees within the ambit of the non-solicitation provisions set forth in the Agreements.  (Cmplt. ¶ 41)

IDW argues that Count Three must be dismissed, either because it is duplicative of the breach of contract claims set forth in Counts One and Two, or because it seeks to impose on IDW obligations it did not have under the Agreements.

**1.      Applicable Law**

"[T]here exists under New York law an implied covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  M/A-Com Security Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990).  "[W]here a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties, the implied covenant of good faith may be implicated."  Id.  "An implied covenant of good faith and fair dealing, however, arises out of the known reasonable expectations of the other party which arise out of the agreement entered into.  The covenant does not create duties which are not fairly inferable from the express terms of that contract."  Interallianz Bank AG v. Nycal Corp., No. 93 Civ. 5024

(RPP), 1994 WL 177745, at *8 (S.D.N.Y. May 6, 1994) (citing <u>Fasolino Foods Co. v. Banca Nazionale del Lavoro</u>, 961 F.2d 1052, 1056 (2d Cir. 1992)).  "In other words, 'such a claim may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.'" <u>Pearce v. Manhattan Ensemble Theater, Inc.</u>, 528 F. Supp. 2d 175, 180–81 (S.D.N.Y. 2007) (quoting <u>Sauer v. Xerox Corp.</u>, 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000)).

Generally, "[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" <u>Fasolino Foods Co.</u>, 961 F.2d at 1056 (quoting <u>Geler v. National Westminster Bank USA</u>, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)).  <u>See</u> <u>Alter v. Bogoricin</u>, No. 97 Civ. 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 2007) (dismissing good faith and fair dealing claim because "the covenant of good faith and fair dealing is not distinct from the underlying contract, and therefore, as a general rule, the cause of action alleging breach of good faith is duplicative of a cause of action alleging breach of contract") (citations and internal quotation marks omitted).  Typically, "raising both claims in a single complaint is redundant, and courts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair dealing." <u>Jordan v. Verizon Corp.</u>, No. 08 Civ. 6414 (GEL), 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008) (collecting cases and dismissing claim for breach of implied covenant of good faith and fair dealing without leave to replead).[2]

---

[2] <u>See also</u> <u>Long v. Marubeni Am. Corp.</u>, No. 05 Civ. 0639 (GEL), 2006 WL 1716878, at *1 (S.D.N.Y. June 20, 2006) (rejecting plaintiffs' assertion that good faith and fair dealing claim arose from different facts and sought different damages because "to the extent this alleged unlawful conduct constituted a breach of an implied contract term, plaintiffs' allegations [were] subsumed under the breach-of-contract claim and may not constitute an entirely separate, and duplicative, cause of action."); <u>Concesionaria DHM, S.A. v. International Finance Corp.</u>, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (dismissing claim for alleged breach of implied duty of good

"Consequently, a claim for breach of the implied covenant of good faith can survive a motion to dismiss 'only if it is based on allegations different from those underlying the accompanying breach of contract claim.'" Grand Heritage Mgmt., LLC v. Murphy, No. 06 Civ. 5977 (NRB), 2007 WL 3355380, at *6 (S.D.N.Y. Nov. 5, 2007) (quoting Siradas v. Chase Lincoln First Bank, N.A., No. 98 Civ. 4028 (RCC), 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999)).  The duty of good faith and fair dealing, however,  "cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract[s]." Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998). And while the presence of "a merger clause does not prevent a court from inferring a covenant of good faith and fair dealing, . . . such an obligation can only be found where the implied term is consistent with other terms in the contract." SNS Bank, N.V. v. Citibank, N.A., 777 N.Y.S.2d 62, 65, 7 A.D.3d 352, 354–55 (1st Dep't 2004) (indicating that where merger clause exists, implied covenant obligation must be "'so interwoven in the whole writing of a contract as to be necessary for the effectuation of the purposes of the contract'") (quoting Galesi, 904 F.2d at 136) (internal quotation marks omitted).  See also Butvin v. DoubleClick, Inc., No. 99 Civ. 4727 (JFK), 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001) ("New York courts have recognized a

---

faith and fair dealing where "[t]he predicate conduct for the claims [was] the same, despite the attempt to emphasize different aspects of the conduct in the implied covenant claim"); Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc., 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000) ("Under New York law, a claim for breach of the implied covenant will be dismissed as duplicative if the conduct allegedly violating the implied covenant is also the predicate for breach of the underlying contract."); W.S.A., Inc. v. ACA Corp., Nos. 94 Civ. 1868 (CSH), 94 Civ. 1493 (CSH), 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) ("The fact that [plaintiff] has bifurcated its breach of contract claim, so as to place some of the allegations in support thereof in the category of 'breach of covenant of fair dealing,' does not grant it two separate causes of action."), modified on other grounds, 1996 WL 735508 (Dec. 20, 1996)).

separate cause of action for breach of the covenant of good faith and fair dealing, however, in cases involving efforts by one party to a contract to subvert the contract itself.").

In sum, to simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims. While independent obligations beyond those stated in the contract will not be inferred, a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms.

### 2. <u>Implied Covenant Theories of Liability</u>

#### a. <u>Violation of Non-Solicitation Provisions</u>

To the extent that Count Three relies on a theory that IDW breached its contractual obligation not to solicit JPMorgan employees, it is entirely duplicative of Count One and must be dismissed. Dismissal is appropriate because this theory merely restates Count One's allegation that "IDW has repeatedly breached its obligations under the Agreements by directly or indirectly soliciting, inducing, recruiting, or enticing JPMorgan employees and/or assisting JPMorgan employees in pursuing opportunities outside JPMorgan." (Cmplt. ¶ 32) <u>See</u> <u>Atlantis Info. Tech., GmbH v. CA, Inc.</u>, 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (dismissing implied covenant claim, which "merely repeat[ed] the allegations set forth in count one of the amended complaint for breach of contract"). <u>See also</u> <u>Goldblatt v. Englander Commc'ns, L.L.C.</u>, No. 06 Civ. 3208 (RWS), 2007 WL 148699, at *5 (S.D.N.Y. Jan. 22, 2007) ("Because the claims are not only similar, but based on identical allegations, the Defendant's counterclaim for breach of the implied covenant of good faith and fair dealing is dismissed.").

This Court rejects JPMorgan's argument that it may move forward with both claims, "[e]ven assuming, <u>arguendo</u>, that the factual predicates of the two claims were

indistinguishable. . . ."  (Pltf. Mem. at 22–23)  Although <u>Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.</u>, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) and <u>Direct Inv. Partners AG v. Cerberus Global Inv., LLC</u>, No. 07 Civ. 3310 (LLS), 2008 WL 335467, at *7 (S.D.N.Y. Feb. 7, 2008),[3] cited by JPMorgan, provide some support for this assertion, overwhelming precedent in this Circuit provides otherwise,[4] as the court in <u>In re Adelphia Commc'n Corp.</u>, No. 02-41729 (REG), 2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) noted:

> While <u>Xpedior</u> supports that argument, <u>Xpedior</u> is thin in its support for what it said, and numerous cases in this district have held the opposite:  a claim for breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim asserted in the same complaint is redundant and must be dismissed on a motion to dismiss.  The Court must agree with the majority of courts in this district, and dismiss the Equity Committee's claim for breach of the implied covenants of good faith and fair dealing against the Investment Banks.

<u>Id.</u> at *8 (citing <u>Goldblatt</u>, 2007 WL 148699, at *5; <u>Alter</u>, 1997 WL 691332, at *7; <u>W.S.A., Inc.</u>, 1996 WL 551599, at *9).

---

[3] JPMorgan also cites <u>Lindner v. International Bus. Mach. Corp.</u>, No. 06 Civ. 4751 (RJS), 2008 WL 2461934, at *11 (S.D.N.Y. June 18, 2008), for the proposition that a plaintiff may assert "distinct legal theories arising from precisely the same conduct."  Though <u>Lindner</u> concerned a breach of contract claim, the case is plainly inapposite, because the alternative causes of action were defamation and tortious interference with business relations, as opposed to breach of the implied covenant of good faith and fair dealing.  <u>See id.</u> (finding only that amended complaint might "be reasonably construed as asserting claims for defamation and tortious interference, in addition to claims for breach of contract").

[4] <u>See, e.g.</u>, <u>Simon v. Unum Group</u>, No. 07 Civ. 11426 (SAS), 2008 WL 2477471, at *4 (S.D.N.Y. June 19, 2008) (dismissing implied covenant claim because it did "not state a distinct cause of action based on a separate set of facts and so [was] not independent from the underlying breach of contract claim as required by New York law"); <u>Dayan Enters. Corp. v. Nautica Apparel, Inc.</u>, No. 03 Civ. 5706 (LLS) 2003 WL 22832706, at *2–*3 (S.D.N.Y. Nov. 26, 2003) (dismissing good faith and fair dealing counterclaim that "simply allege[d] a different way in which [plaintiff] allegedly breached a covenant which (although unwritten and implicit) formed part of the contract"); <u>Argonaut P'ship L.P. v. Bancomer, S.A.</u>, Nos. 96 Civ. 2222 (LLS), 00 Civ. 4244 (LLS), 2001 WL 585525, at *3 (S.D.N.Y. May 30, 2001) (dismissing good faith and fair dealing claim as duplicative of breach of contract claim); <u>National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.</u>, 922 F. Supp. 849, 855 (S.D.N.Y. 1996) (same).

Accordingly, the "non-solicitation" theory of liability underlying JPMorgan's claim for breach of the implied covenant of good faith and fair dealing (Cmplt. ¶ 41(c)) is dismissed.

### b. Failure to Disclose That Citadel Had Hired IDW to Recruit Edsparr

JPMorgan alleges that IDW deprived it of the "fruits" of the Agreements, and thereby breached the implied covenant of good faith and fair dealing, by "failing to inform JPMorgan that it had been retained by Citadel to recruit Edsparr on Citadel's behalf."  (Cmplt. ¶ 41)  Among the benefits JPMorgan expected to realize from the Agreements was an ability to "rel[y] upon IDW to provide advice and assistance in obtaining for JPMorgan's benefit the best and most qualified talent in the financial services industry."  (Id. ¶ 17)  Noting that Citadel "often act[s] in direct competition with JPMorgan," the Complaint further alleges that IDW had an obligation to disclose that it had been retained to "actively solicit[] Patrik Edsparr ("Edsparr"), one of JPMorgan's most senior and valued executives[] on Citadel's behalf."  (Id. ¶¶ 21, 23)  According to JPMorgan, IDW could not "obtain[] for JPMorgan's benefit the best and most qualified talent in the financial services industry" while simultaneously working on behalf of a direct competitor to poach one of  "JPMorgan's most senior and valued executives. . . ."  (Id. ¶¶ 17, 23)

IDW argues that this claim is likewise duplicative of JPMorgan's breach of contract claims.  In the alternative, IDW asserts that this theory seeks to create an obligation that is independent of the parties' Agreements.[5]

---

[5] IDW's alternative arguments are, of course, logically inconsistent.  If the implied covenant theory is duplicative of the breach of contract claims, then it cannot also create obligations independent of the Agreements.  Conversely, if this theory seeks to imply obligations outside of the Agreements, then it cannot be redundant of JPMorgan's breach of contract claims.  In any event, this Court rejects both of these arguments.

With respect to IDW's first argument, it is obvious that this claim does not duplicate JPMorgan's breach of contract claims.  The factual predicate for this implied covenant claim is IDW's failure to notify JPMorgan that Citadel had retained IDW to recruit Edsparr.  (Id. ¶ 23)  In contrast, the predicate for the breach of contract claims is IDW's active role in "soliciting, inducing, recruiting, or enticing JPMorgan employees" and using or disclosing confidential information to third parties for proscribed purposes of, inter alia, solicitation of JPMorgan employees.  (Id. ¶¶ 32, 37)

Regarding IDW's second argument, it is not clear at this stage of the litigation that permitting JPMorgan to plead this implied covenant theory would "create independent obligations beyond the terms of the Agreement[s]."  Given that JPMorgan has alleged that Edsparr was one of its "most senior and valued executives" and was head of the Proprietary Positioning Group (id. ¶ 23) – one of the groups that JPMorgan had retained IDW to recruit for – a jury could find that IDW's decision to accept the Edsparr recruitment assignment from Citadel was incompatible with its obligations to JPMorgan.  In particular, if IDW had disclosed the Citadel retention to JPMorgan, JPMorgan may well have concluded that given IDW's apparent conflict of interest it could no longer (a) rely on IDW's advice and assistance in recruiting candidates for JPMorgan, and in particular for the group that Edsparr had supervised; and (b) supply confidential information to IDW for its use in recruiting suitable candidates.  In sum, it is plausible at this stage of the proceedings that the implied obligation asserted by JPMorgan is "'so interwoven in the whole writing of [the] contract[s] as to be necessary for the effectuation of the purposes of the contract[s].'"  SNS Bank, N.V., 777 N.Y.S.2d at 65, 7 A.D.3d at 355 (quoting Galesi, 904 F.2d at 136)) (internal quotation marks omitted).  Moreover, because "the implied term is consistent with other terms in the contract[s]," the February 12 Agreement's "merger

13

clause does not prevent [this] [C]ourt from inferring a covenant of good faith and fair dealing." SNS Bank, N.V., 777 N.Y.S.2d at 65, 7 A.D. 3d at 354.

The Complaint adequately alleges that IDW "deprive[d] [it] of the benefits of the Agreements" by failing to disclose its retention to poach Edsparr. (Cmplt. ¶¶ 40–41) See Butvin, 2001 WL 228121, at *8 (recognizing existence of "separate cause of action for breach of the covenant of good faith and fair dealing . . . in cases involving efforts by one party to a contract to subvert the contract itself"). Accordingly, this Court denies IDW's motion to dismiss the claim (Cmplt. ¶ 41(a)) that IDW breached the implied covenant by "failing to inform JPMorgan that it had been retained by Citadel to recruit Edsparr on Citadel's behalf."

### c.   Failure to Disclose Citadel's Intentions to Recruit Key JPMorgan Personnel

JPMorgan also contends that IDW breached the implied covenant by "failing to disclose to JPMorgan Citadel's intentions of recruiting key personnel in JPMorgan's Investment Bank. . . ." (Cmplt. ¶ 41 (b)) IDW argues that this theory impermissibly seeks to "create independent obligations beyond those agreed upon and stated in the express language of the contract[s]." See Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract.") (dismissing implied covenant allegation that defendant-corporation had obligation "to provide third parties with a particular opinion" because "neither plain language in the Merger Agreement nor facts alleged in the Complaint . . . support[ed] the existence of [such] an obligation"); Warner Theatre Assoc. Ltd. P'ship v. Metropolitan Life Ins. Co., No. 97 Civ. 4914 (SS), 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) ("The duty of good faith cannot add to, detract from, or alter the terms of the contract itself.").

This Court agrees with IDW.  Neither the Agreements' plain language nor the facts alleged in the Complaint support the existence of an obligation on IDW's part to report to JPMorgan any information in the marketplace that came to its attention regarding Citadel's or any other competitors' interest in recruiting JPMorgan employees.  Accordingly, this implied covenant claim (Cmplt. ¶ 41(b)) is dismissed.

## C.     IDW'S ALLEGED BREACH OF FIDUCIARY DUTY

The Complaint alleges that IDW breached a fiduciary duty it allegedly owed JPMorgan by

> (a) remaining silent in the face of a known and substantial risk to JPMorgan's business, (b) elevating its own personal gain above the interests of JPMorgan, (c) failing to inform JPMorgan that it had been retained by Citadel to recruit Edsparr on Citadel's behalf, (d) failing to disclose to JPMorgan Citadel's intentions of recruiting key personnel in JPMorgan's Investment Bank, and (e) soliciting JPMorgan employees within the ambit of the non-solicitation provisions set forth in the Agreements. (Cmplt. ¶ 46)

IDW has moved to dismiss JPMorgan's breach of fiduciary duty claim, arguing that (1) the Complaint fails to allege facts sufficient to show the existence of a fiduciary relationship; and (2) this claim is duplicative of JPMorgan's breach of contract claims.

### 1.     Applicable Law

Under New York law,

> [a] fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." (Restatement [Second] of Torts § 874, Comment a).  Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arms' length business transactions (see Northeast Gen. Corp. v. Wellington Adv., 82 N.Y.2d 158, 162 ([1993]). Generally, where parties have entered into a contract, courts look to that agreement "to discover . . . the nexus of [the parties'] relationship and the particular contractual expression establishing

> the parties' interdependency" (see id. at 160). . . . However, it is
> fundamental that fiduciary "liability is not dependent solely upon
> an agreement or contractual relation between the fiduciary and the
> beneficiary but results from the relation" (Restatement [Second] of
> Torts § 874, Comment b).

EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y. 3d 11, 19–20, 799 N.Y.S.2d 170, 175 (2005).  In

determining whether a fiduciary relationship exists, "the 'ongoing conduct between parties' must

be considered in order to assess, for example, 'whether a party reposed confidence in another and

reasonably relied on the other's superior expertise or knowledge.'"  United Feature Syndicate,

Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 218 (S.D.N.Y. 2002) (quoting

Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 14, 241 A.D.2d 114, 122 (1st Dep't 1998)).

"While the 'exact limits' of what constitutes a fiduciary relationship are 'impossible of

statement,' a fiduciary relationship may be found in any case 'in which influence has been

acquired and abused, in which confidence has been reposed and betrayed.'"  United Feature

Syndicate, 216 F. Supp. 2d at 218.  Because the inquiry as to whether a fiduciary relationship

exists is "necessarily fact-specific," Wiener, 672 N.Y.S.2d at 14, 241 A.D.2d at 122, a "claim

alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)."

Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006); Better Benefits, Inc.

v. Protective Life Ins. Co., No. 03 Civ. 2820 (LAP), 2004 WL 633730, at *3 (S.D.N.Y. Mar. 30,

2004).

### 2.     The Complaint Adequately Alleges the Existence of a Fiduciary Relationship Between JPMorgan and IDW

Here, JPMorgan has pled sufficient facts to defeat IDW's motion to dismiss.

While the Agreements do not explicitly reference a fiduciary duty, as noted above, "'liability is

not dependent solely upon an agreement or contractual relation between the fiduciary and the

beneficiary but results from the relation.'"  EBC I, Inc., 5 N.Y. 3d at 19, 799 N.Y.S.2d at 175

(quoting Restatement [Second] of Torts § 874, Comment b).  JPMorgan has pled "a broader,

ongoing relationship between JPMorgan and IDW" (Cmplt. ¶ 17) than that reflected in the

Agreements, and has also pled facts indicating that the relationship went beyond the typical

arms' length commercial transaction.  In particular, JPMorgan has alleged that it "relied upon

IDW's superior knowledge of the marketplace for financial services executives, as, for example,

in regards to the pool of available candidates, candidates' qualifications and skills, candidates'

ability to accommodate JPMorgan's institutional needs and organizational structure, candidates'

market value, and the best means of structuring candidates' proposed compensation packages."

(Id.)  The Complaint further alleges that IDW "function[s] as the middleman between candidates

and prospective employers, [which], by necessity, expose[s IDW] to . . . highly confidential and

sensitive information about [its clients]," including JPMorgan.  (Id. ¶ 18)

> The Complaint goes on to allege that
>
> [i]n the financial services industry, candidates for employment
> expect to learn about the position offered in depth.  In order to
> fully evaluate the offered employment opportunity, candidates
> require detailed information about a prospective employer,
> including:  the breadth and depth of the prospective employer's
> portfolio; the level of risk the employer is willing to allow its
> employees to take in their trading activities; the prospective
> employer's financial products; the knowledge, talent, and skills of
> current employees; and the prospective employer's strategy and
> plans for developing the business in the future.  (Id. )
>
> . . .
>
> To ensure that IDW could render the Services effectively, IDW
> was made privy to highly confidential and sensitive information
> regarding JPMorgan and its businesses.  This included information
> concerning JPMorgan's business plans and strategy, the nature and
> extent of JPMorgan's financial holdings, the products JPMorgan
> offered and planned to offer, client relationships, and the
> performance, skills, and compensation of JPMorgan employees.
> (Id. ¶ 19)
>
> The Complaint further alleges that

> [t]o further ensure that IDW could render the Services effectively, IDW was given access to JPMorgan employees so that IDW and its personnel could appropriately assess, among other things, JPMorgan's organizational and institutional needs.  Thus, solely by virtue of the relationship established between JPMorgan and IDW, IDW was able to create, cultivate, and foster relationships with JPMorgan employees.  (Id. ¶ 20)

These alleged facts, if proven, would take this case far outside the world of the ordinary, garden-variety arms' length business transaction.  JPMorgan has alleged a relationship in which IDW served as its adviser, in a position of extraordinary trust, and under circumstances in which it assumed, and may have been entitled to assume, that IDW would act with JPMorgan's best interests in mind.  Cf. EBC I, Inc., 5 N.Y. 3d at 20, 799 N.Y.S.2d at 175.  Only discovery will reveal whether JPMorgan can prove these allegations, but they must be accepted as true at this stage of the litigation, and this Court cannot find now as a matter of law that JPMorgan will not be able to establish a breach of fiduciary duty claim.

IDW makes a variety of arguments in asserting that the Complaint fails to allege sufficient facts to show the existence of a fiduciary relationship.  IDW argues that (1) the relationship was too short-lived to establish a fiduciary relationship; (2) certain provisions of the Agreements demonstrate that no fiduciary relation existed; (3) the Agreements' detailed and comprehensive nature precludes reading in an additional fiduciary obligation; (4) the Complaint fails to allege that IDW was empowered to act on JPMorgan's behalf or that it otherwise dominated or controlled JPMorgan; and (5) the relationship was an ordinary arms' length commercial transaction and that JPMorgan has failed to allege exceptional circumstances giving rise to a fiduciary duty.  Given the standard applicable to a motion to dismiss, each of these arguments fails.

With respect to IDW's suggestion that the twenty-month course of dealings between JPMorgan and IDW was too short to support a fiduciary relationship, IDW relies on

Sony Music Entm't Inc. v. Robison, No. 01 Civ. 6415 (LMM), 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002).  Sony Music provides no support for IDW's position, however.  That case turned not on the length of the relationship between the parties, but instead on the music group's failure to plead sufficient facts from which the court could find that a fiduciary relationship existed. Moreover, Sony Music involved recording artists' allegations that their record company owed them a fiduciary duty, an obligation that "'[c]ourts in this district have routinely failed to find . . . .'"  Sony Music, 2002 WL 272406, at *3 (quoting Cooper v. Sony Records Int'l, No. 00 Civ. 233 (RMB), 2001 WL 1223492, at *5 (S.D.N.Y. Oct. 15, 2001)).  In sum, IDW has offered no authority suggesting that a business relationship of twenty months is per se too short to support a fiduciary obligation.

With respect to IDW's argument that the Agreement's indemnity, non-exclusivity, "independent contractors," and audit provisions "make clear . . . that the parties in this case appropriately dealt at arm's length and nothing more" (Def. Br. at 15), the short answer is that none of these provisions preclude a finding that a fiduciary relationship existed.  IDW cites no authority, for example, for the argument that an indemnitor cannot owe a fiduciary duty to its indemnitee.  Similarly, IDW does not explain how the February 12 Agreement's non-exclusivity provision "directly contradict[s] plaintiff's allegations that defendant owed plaintiff a fiduciary duty." [6]  (Id.)

---

[6] IDW misreads the February 12 Agreement's non-exclusivity provision, which appears designed to protect JPMorgan's right to use other suppliers:

> This is not an exclusive agreement.  [IDW] acknowledges that [JPMorgan] uses (and reserves the right to continue to use) other suppliers to provide goods and services that are similar or related to the Services [that IDW contracts to provide].  [IDW] will, to the extent reasonably requested by [JPMorgan], cooperate in good faith and in a timely manner with [JPMorgan's] other suppliers to

Nor would the "independent contractors" provision prevent a finder of fact from concluding that a fiduciary relationship existed between IDW and JPMorgan.  See Grand Heritage, 2007 WL 3355380, at *7 n.15 ("[T]he fact that an individual is labeled an 'independent contractor' does not defeat the existence of a fiduciary relationship where one would otherwise exist."); Pergament v. Roach, 838 N.Y.S.2d 591, 593, 41 A.D.3d 569, 571 (2d Dep't 2007) ("[T]he fact that the agreement refers to [defendant-financial advisor] as an 'independent contractor' does not defeat the existence of a fiduciary relationship where one would otherwise exist.") (modifying trial court's order to thereby deny summary judgment on defendants' motion to dismiss claim for breach of fiduciary duty).  The fact that IDW lacked the authority to bind JPMorgan is likewise not dispositive.  See Pergament, 838 N.Y.S.2d at 593, 41 A.D.3d at 571 ("[S]ince one can give advice to an entity without having the authority to bind it, the Supreme Court's conclusion that the moving defendants were not fiduciaries because they had no authority to bind [the corporation] is incorrect.").[7]

With respect to the audit provision, IDW has cited no case holding that an audit right precludes a finding that a fiduciary relationship exists between contracting parties.  The

_____

allow the suppliers to efficiently perform services for [JPMorgan] and its customers.  (Weinstein Decl., Ex. A at 10)

[7] IDW cites three inapposite cases in support of its "independent contractors" argument.  (Def. Br. at 15 n.4)  See Brinsights v. Charming Shoppes of Delaware, Inc., No. 06 Civ. 1745 (CM), 2008 216969, at *8–*9 (S.D.N.Y. Jan. 16, 2008) (granting summary judgment on breach of fiduciary duty claim where contract had expressly disclaimed any "trust relationship between the parties"); Ritchie Capital Mgmt., LLC v. Coventry First LLC, No. 07 Civ. 3494 (DLC), 2007 WL 2044656, at *5–*6 (S.D.N.Y. July 17, 2007) (rejecting breach of fiduciary duty claim where one plaintiff alleged that "defendants were partners, joint venturers, and co-venturers of [another plaintiff], which create[d] a fiduciary duty to each of the plaintiffs[,]" despite express "contractual denial of a partnership and joint venture"); Calvin Klein Trademark Trust v. Wachner, 129 F. Supp. 2d 248, 250 (S.D.N.Y. 2001) (rejecting breach of fiduciary duty claim based on agreements where proponent did not claim that a fiduciary relation existed by virtue of a close and ongoing relationship of extraordinary trust between the parties).

sole case cited by IDW, <u>Community Counseling & Mediation Servs. v. New Visions for Public</u> <u>Sch.</u>, No. 15086/07, 2008 WL 271711 (N.Y. Sup. Ct., Kings County Jan. 31, 2008), is not on point.  In that case, the plaintiff's allegation of a fiduciary relationship rested upon a clause in the parties' agreement that obligated the defendant to "exercise due diligence in requiring [plaintiff] to substantiate data regarding the actual expenditure of [a] Grant" and reserved the <u>defendant's</u> "right to audit or review the financial records pertaining to this grant." <u>Id.</u> at *4.  In contrast, in this case it is the party with the audit right that is asserting the existence of a fiduciary relationship.  Moreover, the <u>Community Counseling</u> court concluded that "[t]he clear import of this [audit] provision is that [the defendant] was acting as a fiduciary, not to [plaintiff], but to the funders of the grants awarded by [defendant] on their behalf." <u>Id.</u>

IDW's argument that the "detailed, comprehensive nature of the . . . Agreements militates against reading additional obligations into the parties' relationship" (Def. Reply Br. at 3) is likewise not persuasive.  This argument ignores the case law, cited above, establishing that "fiduciary 'liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary <u>but results from the relation</u>.'") (quoting Restatement (Second) of Torts § 874 cmt. b) (emphasis added).

IDW also argues that "JPMorgan has failed to allege anything resembling the 'requisite high degree of dominance and reliance' needed to state a claim for breach of fiduciary duty."  (Def. Reply Br. at 5 (quoting <u>SNS Bank, N.V.</u>, 777 N.Y.S.2d at 65, 7 A.D.3d at 355–56 (citation omitted)))   JPMorgan has sufficiently alleged the requisite degree of dominance by IDW and reliance by JPMorgan, however, both of which resulted from information asymmetry

between the parties.[8]  JPMorgan has pled that it "relied upon IDW's superior knowledge of the marketplace for financial services executives, as, for example, in regards to the pool of available candidates, candidates' qualifications and skills, candidates' ability to accommodate JPMorgan's institutional needs and organizational structure, candidates' market value, and the best means of structuring candidates' proposed compensation packages."  (Cmplt. ¶ 17)  The Complaint also alleges that JPMorgan revealed a great deal of "highly confidential and sensitive information to IDW," including information about JPMorgan's business plans, strategy, financial holdings, products and future products, client relationships, and the performance, skills, and compensation of its employees.  (Id. ¶ 19)  In contrast, there is no indication that JPMorgan was given access to confidential or sensitive information concerning IDW.  (Id. ¶ 19)

            Finally, IDW contends that the parties had nothing more than "a conventional business relationship, [which] without more, does not become a fiduciary relationship by mere allegation."  Oursler v. Women's Interart Center, Inc., 566 N.Y.S.2d 295, 297, 170 A.D.2d 407, 408 (1st Dep't 1991).  For reasons already stated, this Court has concluded that JPMorgan has adequately alleged unusual circumstances evincing "a higher level of trust than [is] normally present in the marketplace between those involved in arm's length business transactions."  EBC I, 5 N.Y. 3d at 19, 799 N.Y.S.2d at 175 (citing Northeast Gen., 82 N.Y.2d at 162).

---

[8] IDW also cites Atlantis Info. Tech., 485 F. Supp. 2d at 231–32, where the court dismissed a breach of fiduciary duty claim in part because the licensor-plaintiff had "'not alleged facts suggesting an obvious disparity between the parties,'" notwithstanding the plaintiff's claim "that the Defendant ha[d] superior knowledge. . . ."  Here, however, JPMorgan's detailed allegations of an information asymmetry more plausibly suggest "'an obvious disparity between the parties.'"  Id. (quoting Cal Distrib. v. Cadbury Schweppes Ams. Bevs., Inc., No. 06 Civ. 0496 (RMB) (JCF), 20007 WL 54534, at *9 (S.D.N.Y. Jan. 5, 2007)).

3.      **JPMorgan's Fiduciary Duty Claim is Sufficiently Distinct from its Breach of Contract Claims to Avoid Dismissal**

IDW argues that "[e]ven if JPMorgan ha[s] pleaded adequately the existence of a fiduciary relationship between the parties," "Count Four should be dismissed because it duplicates Counts One and Two."  (Def. Br. at 16)  Here, however, dismissal is not appropriate because it is "reasonable to infer, under the liberal pleading standard of Rule 8, that the claim[] for . . . breach of fiduciary duty [is] based, at least in part, on facts other than those alleged in the breach of contract claim[s]."  E*Trade Sav. Bank v. National Settlement Agency, Inc., No. 07 Civ. 8065 (LTS), 2008 WL 2902576, at *2 (S.D.N.Y. July 25, 2008) (denying defendant title agency's motion to dismiss breach of fiduciary duty claim, which "refer[red] to the disbursement of funds, [but could] be read also to be premised on defendant's allegedly improper conduct in undertaking its duties as a title agent[,]" where breach of contract claim was "specifically premised on [defendant's] agreement to undertake obligations as a closing agent in holding and disbursing funds") (emphasis in original).  Indeed, IDW concedes that it is only in Count Four that JPMorgan alleges that IDW "remain[ed] silent in the face of a substantial risk to JPMorgan's business [and] elevat[ed] its own personal gain above JPMorgan's interest. . . ."  (See Def. Br. at 17; Cmplt. ¶ 46)  And as this Court has discussed above, the Complaint adequately alleges the existence of a "broader, ongoing" fiduciary relationship that may have extended beyond the four corners of the Agreements.  (Cmplt. ¶ 17).  See EBC I, 5 N.Y.3d at 19–20, 799 N.Y.S.2d at 175. IDW's remaining citations are not on point because they involve plaintiffs who asserted breach of fiduciary duty claims based upon factual circumstances identical to the underlying breach of contract claims.  Because JPMorgan has plausibly alleged the existence of a fiduciary relationship and has stated a cause of action that is sufficiently distinct from its breach of contract claims, IDW's motion to dismiss Count Four of the Complaint is denied.

**D.**   **JPMORGAN'S CLAIM FOR COSTS AND ATTORNEYS' FEES**

Finally, this Court grants IDW's unopposed motion to dismiss the Complaint's demand for costs and attorneys' fees.  "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003).  Here, the Agreements do not provide for attorneys' fees or costs in an action between the parties.  Nor does JPMorgan allege any other basis for recovery of costs or attorneys' fees.  Accordingly, this Court grants IDW's motion to dismiss the Complaint's demand for costs and attorneys' fees.

**CONCLUSION**

For the foregoing reasons, this Court GRANTS in part and DENIES in part

Defendant IDW's motion to dismiss Count Three of the Complaint;[9] DENIES IDW's motion to

dismiss Count Four, and GRANTS IDW's motion to dismiss the Complaint's demand for costs

and attorneys' fees.

The Clerk of the Court is directed to terminate Defendant IDW's motion (Docket

No. 6).

Dated: New York, New York
February 9, 2009

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[9]  As set forth above, all that remains of Count Three is the theory that IDW breached the implied
covenant of good faith and fair dealing by failing to inform JPMorgan that Citadel had retained it
to recruit Patrik Edsparr.