UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JPMORGAN CHASE BANK, N.A.,

                                        Plaintiff,

                -against-                                    08 Civ. 9116 (PGG)

THE IDW GROUP, LLC,                                 **MEMORANDUM
                                                     OPINION AND ORDER**

                                        Defendant.

PAUL G. GARDEPHE, U.S.D.J.:

            Before this Court is Plaintiff JPMorgan Chase Bank, N.A.'s ("JPMorgan") motion

for leave to amend the Complaint to add (1) Patrik Edsparr as a defendant; (2) causes of action

against Defendant The IDW Group, LLC ("IDW") for tortious interference with economic

relations and aiding and abetting breach of fiduciary duty; and (3) a claim for punitive damages

against IDW.  For the reasons stated below, JPMorgan's motion is GRANTED.

## PROCEDURAL HISTORY

            Between February 2007 and June 2008, IDW entered into four written agreements

with JPMorgan in which IDW agreed to provide certain executive search services to JPMorgan.

On October 23, 2008, JPMorgan filed the Complaint, which alleged that IDW breached these

agreements, breached the implied covenant of good faith and fair dealing, and breached its

fiduciary duty to JPMorgan, by inter alia, recruiting JPMorgan employees to work at Citadel

Investment Group, LLC ("Citadel"), a competing firm.  The Complaint alleges that the first of

these employees to leave for Citadel was Edsparr, who as of January 2008, "functioned as

JPMorgan's Global Head of Rates, Foreign Exchange, Securitized Products, Fixed-Income

Exotics & Hybrids, Proprietary Positioning, and Principal Investments."  (Cmplt. ¶ 23)

On November 12, 2008, IDW moved to dismiss JPMorgan's good faith and fair dealing, fiduciary duty, and attorneys' fees claims.  In <u>JPMorgan Chase Bank, N.A. v. IDW Group, LLC</u>, No. 08 Civ. 9116 (PGG), 2009 U.S. Dist. LEXIS 9207, 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009), this Court granted in part and denied in part IDW's motion to dismiss the good faith and fair dealing claim, denied the motion to dismiss the fiduciary duty claim, and granted the motion to dismiss the claim for attorneys' fees.  On February 25, 2009, IDW filed an Answer to the Complaint and asserted a Counterclaim against JPMorgan for unpaid fees for recruiting services.  JPMorgan filed its Answer to the Counterclaim on March 20, 2009.

On March 25, 2009, JPMorgan filed the instant motion to amend, which was fully submitted on April 16, 2009.  The proposed amendment would add two new counts against IDW for tortious interference with economic relations (Proposed Count Five) and for aiding and abetting Edsparr's alleged breach of fiduciary duty (Proposed Count Six), and also add a claim for punitive damages against IDW.  (Proposed 1st Am. Cmplt. at 18-19, 25)  The proposed amendment would also add Edsparr as a defendant and would plead six counts against him – two tortious interference claims (Proposed Counts Nine and Ten), two breach of contract claims (Proposed Counts Seven and Eleven), a breach of fiduciary duty claim (Count Eight), and a claim for a declaratory judgment (Count Twelve).[1]  (<u>Id.</u> ¶¶ 94–132)

Apart from three nonparty depositions – the last of which is scheduled for May 19, 2009 – May 4, 2009 was the deadline for completion of fact discovery.  At present, June 1, 2009 is the deadline for dispositive motions.

---

[1]  On April 9, 2009, Edsparr filed a lawsuit against JPMorgan in the United Kingdom seeking nearly $2.3 million in alleged post-termination compensation.  (<u>See</u> Apr. 14, 2009 Letter of Debra L. Raskin to this Court, Enclosure ("<u>Edsparr v. J P Morgan Chase Bank, N.A.</u>, [2009] EWCA (QB) HQ09X01552, Particulars of Claim"))

## DISCUSSION

I.    **LEGAL STANDARD GOVERNING JPMORGAN'S MOTION TO AMEND**

"Rule 15(a) generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, Rule 21 governs." Momentum Luggage & Leisure Bags v. Jansport, No. 00 Civ. 7909 (DLC), 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001).  See Sheldon v. PHH Corp., No. 96 Civ. 1666 (LAK), 1997 WL 91280, at *3 (S.D.N.Y. Mar. 4, 1997) ("[A] broad reading of Rule 15 would permit amendments for any purpose, including changes of parties. . . . Nevertheless, the preferred method is to consider such motions under Fed. R. Civ P. 21, which specifically allows for the addition and elimination of parties.").  Rule 21 provides that a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21.  Under Rule 21, "courts must consider judicial economy and their ability to manage each particular case, as well as how the amendment would affect the use of judicial resources, the impact the amendment would have on the judicial system, and the impact the amendment would have on each of the parties already named in the action." Momentum Luggage, 2001 WL 58000, at *2; Sly Magazine, LLC v. Weider Publ'ns LLC, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (same) (quoting Momentum Luggage, 2001 WL 58000, at *2).  In deciding whether to permit joinder, this Court "is guided by 'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" Momentum Luggage, 2001 WL 58000, at *2 (quoting Soler v. G & U, Inc., 86 F.R.D. 524, 527–28 (S.D.N.Y. 1980) (internal quotation omitted)); FTD Corp. v. Banker's Trust Co. 954 F. Supp. 106, 109 (S.D.N.Y. 1997) ("Although Rule 21, and not Rule 15(a), normally governs the addition of new parties to an action, 'the same standard of liberality' applies under either Rule.") (quoting Fair Housing Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y.1972)).

Where, as here, amendment requires leave of the court, Rule 15(a)(2) of the
Federal Rules of Civil Procedure directs that "[t]he court should freely give leave when justice so
requires."  Fed. R. Civ. P. 15(a)(2).  "It is settled that the grant of leave to amend the pleadings
pursuant to Rule 15(a) is within the discretion of the trial court."  <u>Zenith Radio Corp. v.
Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S. Ct. 795, 802 (1971) (citing <u>Foman v. Davis</u>,
371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).  "The Second Circuit has held that a Rule 15(a)
motion 'should be denied only for such reasons as undue delay, bad faith, futility of the
amendment, and perhaps most important, the resulting prejudice to the opposing party.'"  <u>Aetna
Cas. & Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 603–04 (2d Cir. 2005) (quoting
<u>Richardson Greenshields Secs., Inc. v. Lau</u>, 825 F.2d 647, 653 n.6 (2d Cir.1987)).  <u>See</u> <u>Ruotolo
v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008) (citing 6 Wright, Miller, & Kane, <u>Federal
Practice and Procedure: Civil 2d</u> § 1487 (2d ed. 1990)) (suggesting that prejudice to the opposing
party is "'the most important factor'" and "'the most frequent reason for denying leave to
amend'").  <u>See also</u> <u>Foman</u>, 371 U.S. at 182, 83 S. Ct. at 230 ("In the absence of any apparent or
declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant,
repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the
opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave
sought should, as the rules require, be 'freely given.'").

"The rule in this Circuit has been to allow a party to amend its pleadings in the
absence of a showing by the nonmovant of prejudice or bad faith."  <u>Block v. First Blood Assocs.</u>,
988 F.2d 344, 350 (2d Cir. 1993).  <u>See</u> <u>State Teachers Ret. Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856
(2d Cir. 1981) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does
not provide a basis for the district court to deny the right to amend.").  "However, 'the longer the

period of an unexplained delay, the less will be required of the nonmoving party in terms of a

showing of prejudice.'"  Block, 988 F.2d at 350 (quoting Evans v. Syracuse City Sch. Dist., 704

F.2d 44, 47 (2d Cir. 1983)).

## II.   LEGAL ANALYSIS OF JPMORGAN'S MOTION TO AMEND

IDW argues that granting JPMorgan's proposed amendment would cause it

substantial prejudice, that JPMorgan has no excuse for failing to bring these claims earlier, and

that JPMorgan's conduct amounts to bad faith.  (Def. Br. 9)  JPMorgan contends that the

proposed amendment would promote judicial economy and that IDW's claims of undue

prejudice, undue delay, and bad faith are without merit.  (Pltf. Rply. 4–5)

### A.   Whether the Proposed Amendment Would Unduly Prejudice IDW

IDW argues that granting the proposed amendment would cause it "substantial

prejudice" (Def. Br. 9) because it would necessitate substantial additional discovery and require

adjusting the case management plan.  (Id. at 12)  IDW further argues that because Edsparr is a

Swedish citizen who works and resides in the United Kingdom, adding him as a defendant would

significantly complicate this action because of "the difficulty of completing service on a foreign

defendant," "the likelihood of jurisdictional challenges," and the fact that "discovery may be

subject to cumbersome Hague Convention rules."  (Id. at 10–11)

JPMorgan counters that the proposed Amended Complaint merely adds that

Edsparr was involved in the wrongful solicitation that the original Complaint alleges against

IDW, and therefore that IDW exaggerates the need for substantial additional discovery.  (Pltf.

Rply. 7–8)  With respect to IDW's concerns about adding a foreign defendant, JPMorgan recites

Edsparr's ties to New York and further argues that, pre-amendment, this Court need not

conclusively resolve the issues of service and personal jurisdiction.  (Id. at 8–9)  JPMorgan also

asserts that IDW cannot claim surprise because the underlying facts were known to IDW before it produced documents and were also explored in discovery.  (Id. at 9)

    1. <u>Applicable Law</u>

   "In determining what constitutes 'prejudice,'" courts in this Circuit "consider whether the assertion of the new claim would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  <u>Block</u>, 988 F.2d at 350.  "This analysis requires an assessment of 'not only the amount of time that passed before the movant sought to amend, but also the reasons for that delay and its practical impact on the other side's legitimate interests, including both that party's ability to respond to new claims or defenses and any other prejudice flowing from a delay in the final adjudication of the case.'"  <u>Sly Magazine</u>, 241 F.R.D. at 532 (quoting <u>Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp.</u>, No. 03 Civ. 9547 (PKL)(MHD), 2004 WL 2903772, at *3 (S.D.N.Y. Dec. 15, 2004)).

    2. Whether the Proposed Amendment Would Require IDW to Expend
      <u>Significant Additional Resources for Discovery and Trial</u>

   Given the nature of the existing claims in this case, IDW overstates the extent to which the proposed amendment would require additional discovery.  For example, IDW argues that Proposed Count Six – which alleges that IDW aided and abetted Edsparr's breach of fiduciary duty – would require discovery regarding what Edsparr earned during his period of alleged disloyalty to JPMorgan.  (Def. Br. 14)  Assuming <u>arguendo</u> that this is true, such discovery would be quite limited in scope.[2]  And with respect to Proposed Count Five – the

---

[2]  Moreover, the possibility that IDW and Edsparr may be held jointly and severally liable for certain damages weighs in favor of joining Edsparr as a defendant.  <u>See</u> Fed. R. Civ. P. 20(a)(2)(A) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is

tortious interference claim – IDW itself suggests that this count "rests on precisely the same allegations that form the basis of JPMorgan's contract, implied covenant and fiduciary duty claims against IDW in the Complaint." (Def. Br. 16) Assuming this is so, it seems unlikely that IDW would require substantial additional discovery with respect to the proposed tortious interference claim.

This case is thus analogous to Ginsberg v. Government Props. Trust, Inc., No. 07 Civ. 365 (CSH), 2008 WL 3833876, at *2 (S.D.N.Y. Aug. 13, 2008), which rejected the defendant's argument that an amended complaint would be "especially prejudicial because of the additional discovery that would be required," given that

> the claims in the proposed amendment arise out of the same agreement that is the subject of the underlying complaint – thereby minimizing the need for significant additional discovery. Additionally, the legal issues raised by the proposed amendment and likely defenses are quite similar to those involved in the original claims. Also, there are no pending dispositive motions and no trial date has been set by the Court. Therefore, defendant will incur little extra time or expense in defending the new claims. Under these circumstances, I am not convinced that permitting the proposed amendment will unduly prejudice GPT.

Id. (granting plaintiff leave to amend complaint to add three new claims against defendant). See A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (granting leave to amend complaint to add two corporate defendants and finding no prejudice, where no trial date had not been set, discovery had not been completed, and claims against new defendants did "not raise factual claims unrelated to the events in [the] original third-party complaint").

In any event, "where the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded,"

---

asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences. . . .").

"the mere fact that discovery has concluded does not provide a reason for denying leave to amend." Kreinik v. Showbran Photo, Inc., No. 02 Civ. 1172 (RMB) (DF), 2003 WL 22339268, at *10 (S.D.N.Y. Oct. 14, 2003) (finding no prejudice where "the proposed new claims relate to the defendants['] motivation and intent in asserting their counterclaims, a subject on which the parties should not need substantial additional discovery). "[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989) (reversing, as abuse of discretion, the denial of defendant's motion to amend pleading to assert affirmative defense).

Here, as in Ginsberg, there are no pending dispositive motions and no trial date, and the legal issues raised by the proposed amendment and likely defenses overlap considerably with those involved in the original claims against IDW.  Although granting JPMorgan's motion will add Edsparr as a defendant, both the original Complaint and the motion practice to date has demonstrated his central role in this affair.

In sum, the additional resources that IDW will have to expend in post-amendment discovery and trial preparation are not so significant as to constitute undue prejudice.

3.    Whether the Proposed Amendment Would Significantly Delay the Resolution of this Dispute

With respect to IDW's argument that Edsparr may be subject to different service rules because he is a Swedish citizen who works and resides in the United Kingdom, this Court finds sufficient the Proposed First Amended Complaint's allegation that "Edsparr maintains a residence at 126 Roger Canoe Hollow Road, Mill Neck, New York, 11765. . . ." [3]  (Proposed 1st

---

[3] See Fed. R. Civ. P. 4(e)(2)(B) (permitting service by leaving a copy of the summons and complaint "at the individual's dwelling or usual place or abode with someone of suitable age and discretion who resides there").

Am. Cmplt. ¶ 6)  See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 258 (2d Cir. 1991) (holding that defendant, a citizen and domiciliary of Saudi Arabia, was properly served at his New York apartment despite having spent only thirty-four days of the calendar year there). See also 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1524 (S.D.N.Y. 1995) (holding that defendant – a Florida resident who stayed rent-free at nephew's apartment during his "episodic" visits to New York City and who was listed at that address in the telephone book – was properly served by service on doorman of nephew's apartment building).  With respect to IDW's averment that no one lives in the Mill Neck house, this potential obstacle to service is not, standing alone, a reason to deny JPMorgan leave to add Edsparr to this action.  Post-amendment, if JPMorgan is unable to timely achieve binding service on Edsparr, at that time this Court may consider whether to sever him as a defendant.  See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Similarly, with respect to IDW's concerns about personal jurisdiction, this Court need not resolve this issue pre-amendment.  See Topps Co., Inc. v. Cadbury Stani, S.A.I.C., No. 99 Civ. 9437 (CSH) (GWG), 2002 WL 31014833, at *2 (S.D.N.Y. Sept. 10, 2002) (declining to resolve whether court had personal jurisdiction over prospective defendant Cadbury Schweppes and concluding that, "[i]f in fact there is no personal jurisdiction over Cadbury Schweppes, Cadbury Schweppes may so move on a complete record following service of the proposed amended complaint.").  In any case, given that (1) Edsparr worked for years for JPMorgan in New York and maintains a home here; and (2) JPMorgan asserts that Edsparr, while working for JPMorgan, solicited employees of JPMorgan's New York office to work for Citadel in New York, it is not clear that this Court lacks personal jurisdiction over Edsparr.  See, e.g., Steuben Foods, Inc. v. Morris, No. 01 Civ. 0521E, 2002 WL 1628061, at *2–*4 (W.D.N.Y. May 29,

2002) (finding personal jurisdiction over Georgia corporation that allegedly solicited New York-based employees of another company); McCrory Corp. v. Cloth World, Inc., 378 F. Supp. 322, 324–25 (S.D.N.Y. 1974) (finding personal jurisdiction over out-of-state defendant in wrongful solicitation action where defendant had transacted substantial business in New York and had allegedly committed tort in New York by making phone calls to various New York-based employees).[4]

In short, IDW has not shown that adding Edsparr as a defendant will necessarily and significantly delay the resolution of this dispute.

### B.   Whether JPMorgan Has Unduly Delayed, Evidenced a Dilatory Motive, or Acted in Bad Faith

IDW argues that any claim against Edsparr should have been filed long ago. JPMorgan states, however, that while it "may have suspected that Edsparr played a role in soliciting JPMorgan's employees to Citadel based on the fact that a number of employees left JPMorgan and joined Citadel shortly after Edsparr did so,"[5] it lacked evidence to name Edsparr

---

[4]  The cases IDW cites are easily distinguished.  See Alpha Lyracom Space Commc'ns Satellite Corp., No. 89 Civ. 5021 (JFK), 1994 WL 256671, at *2 (S.D.N.Y. June 7, 1994) (denying third motion to amend where plaintiff sought to add two plaintiffs and seventeen defendants, there was an unexcused five-year delay, and movant had previously conceded that adding these defendants would be improper); SEB, S.A. v. Montgomery Ward & Co., Inc., No. 99 Civ. 9284 (RCC), 2002 WL 31175244, at *5 (S.D.N.Y. Oct. 1, 2002) (denying amendment where discovery was complete and plaintiff failed to explain six-month delay between acquiring information necessary for amendment and seeking leave to amend); H.L. Hayden Co. of NY, Inc. v. Siemens Med. Sys., Inc., 112 F.R.D. 417, 422–23 (S.D.N.Y. 1984) (denying amendment where discovery was complete, summary judgment motions were sub judice, and plaintiffs had filed motion one and a half years after deadline to join additional parties without previously seeking deadline extension).

[5]  There is evidence that as long ago as May 2008, JPMorgan suspected that Edsparr had played a role in recruiting colleagues at JPMorgan to join him at Citadel.  In a May 7, 2008 letter to Edsparr, JPMorgan's in-house counsel stated:  "We believe that Citadel Investment Group's recent hiring of Derek Kaufman and Rich Mazella – each of whom worked for you at JPMorgan, resigned within a short period following your resignation and apparently will be working for you at Citadel – resulted from a violation of the terms of your January 20, 2005 and January 19, 2006

---

as a defendant until IDW's March 2, 2009 document production and Ilana Weinstein's March 13,

2009 deposition.  (See Pltf. Rply. Br. 5–6)  The March 2, 2009 document production contains a

March 7, 2008 email from Weinstein, IDW's principal, to Citadel head Ken Griffin and Darcy

Zulpo, Citadel's Global Head of Recruiting.  (Id. at 1).  The email exchange appears to describe

Citadel's offer to recruit Edsparr and, notwithstanding the omission of pronouns, suggests that

Edsparr may have offered to solicit other JPMorgan employees to leave for Citadel:

> Finally, (and this more on strategy less about economics) wants to
> discuss business-building priorities in the immediate and slightly
> longer term.  His point was "people here have a lot of loyalty to
> me, for example, I could lift out the European Distressed team,
> Asian Special Situations team, Principal RE in the Americas, etc.
> Wants to better understand what you have appetite for.["]

(Id., Ex. A (Mar. 7, 2008 email from I. Weinstein to D. Zulpo & K. Griffin), at D 00645))

At her March 13, 2009 deposition, Weinstein conceded that this email reflected a conversation

she had with Edsparr while he was employed at JPMorgan.  (Weinstein Tr. 184:9-186:12)  Based

on Weinstein's testimony and the above email, JPMorgan moved on March 25, 2009 for leave to

amend the Complaint.  This record does not demonstrate that JPMorgan acted in bad faith or

with undue delay.[6]

### C.    Whether the Proposed Amendment Would Foster Judicial Economy

Finally, IDW does not address JPMorgan's argument that the proposed

amendment would allow it to avoid initiating "a parallel lawsuit against Edsparr and IDW in

which the claims and evidence would be almost entirely overlapping."  (Pltf. Rply. Br. 4; see

Pltf. Br. 3)  Because the proposed amendment arises from the same operative facts as the claims

---

Restricted Stock Unit Award Agreements ("Agreements") and other of your continuing
obligations to the firm."  (Raskin Aff., Ex. G)

[6] Similarly, there is no basis to find that JPMorgan acted in bad faith by not pleading a punitive
damages claim in the original complaint.  The punitive damages claim flows from JPMorgan's
newly added tortious interference claim.

and events described in the original complaint – namely, the alleged improper solicitation of Edsparr and JPMorgan employees to resign from JPMorgan and join Citadel – granting the proposed amendment would serve the interest of judicial economy.  This Court "has a substantial interest in adjudicating the entire dispute in one action."  State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (concluding that proposed amendment to add thirty-eight new defendants "would buttress judicial economy" and that "[p]laintiff 'should not be put to the burden of prosecuting two separate cases with identical factual predicates'") (quotation omitted).  See Expoconsul Int'l v. A/E Sys., Inc., 145 F.R.D. 336, 338–39 (S.D.N.Y. 1993) (granting motion to add four new defendants, even though case had been pending five years and over 5,600 pages of deposition testimony had been taken, because amendment would "not add significantly to the issues in the case or to the discovery necessary before the case [could] proceed to trial" and "forcing [plaintiff] to institute a new action against the new defendants would run counter to the interests of judicial economy").  See also Ginsberg, 2008 WL 3833876, at *2 n.1 (granting leave to add claim for transaction that was not the subject of original complaint but which arose out of same underlying contract because "[n]othing [was] to be gained by requiring the Plaintiff to go to th[e] additional effort" of filing "a separate action alleging this additional claim and then mov[ing] to consolidate the two cases for all purposes").

## CONCLUSION

For the foregoing reasons, JPMorgan's motion to amend the Complaint to add Edsparr as a defendant, to add causes of action against Defendant IDW, and to add a request for punitive damages against Defendant IDW is GRANTED.  JPMorgan is directed to file and serve by May 15, 2009, its First Amended Complaint in the form attached as an exhibit to its motion papers.

The Clerk of the Court is directed to terminate JPMorgan's motion (Docket No. 22).

Dated: New York, New York
      May 12, 2009

SO ORDERED.

Paul G. Gardephe
United States District Judge

13